IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ANTONIO MEZA-SAYAS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-04-375-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| JEFF CONWAY, Warden, Idaho | ) | |
| Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court is Respondent's Renewed Motion for Summary

Dismissal (Docket No. 27).  The Court previously determined that Petitioner's Petition

was filed after the expiration of the statute of limitations, and the Court provided

Petitioner with an opportunity to show circumstances warranting equitable tolling.  *Order*

*of March 6, 2006* (Docket No. 30).  The Court appointed Teresa A. Hampton as counsel

for Petitioner.

---

[1] Conway replaces former Respondent State of Idaho. *See Amended Petition* (Docket No. 26).

MEMORANDUM ORDER  1

Petitioner filed an Amended Petition (Docket No. 26), reflecting that the proper respondent is Jeff Conway.  The Court determined that an evidentiary hearing was required in this case to determine whether equitable tolling should be applied.  That hearing was held on September 8, 2006.  The transcript has been prepared, and the parties have filed their post-hearing briefing.

All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in accordance with 28 U.S.C. § 636(d).  Having considered the record in this case, the evidence presented at the hearing, and the arguments of the parties, the Court now enters its Order.

## FINDINGS OF FACT

Based upon the state court record and the evidence presented at the evidentiary hearing, the Court makes the following findings of material fact.

1.  Petitioner brings the following claims in his federal Petition: (1) ineffective assistance of counsel for failure to file a direct appeal, and (2) lack of a voluntary, knowing, and intelligent plea because counsel misled him into believing that his sentence would be ten years.  *Amended Petition* (Docket No. 26).

2.  Petitioner immigrated to the United States from Mexico when he was 19 years old.  *Transcript (Tr.)* 14:11-12.  He worked as a firefighter for the Bureau of Land Management until September 1996.  *Exhibit 111*, p. 6.  He

MEMORANDUM ORDER  2

was 34 years old when he was first incarcerated on the charges underlying this matter. *Exhibit 101.*

3.      On September 8, 1996, Petitioner was arrested and charged with first degree murder. *State Court Record, Exhibit A-1*, p. 5. On March 7, 1997, after a guilty plea, Petitioner was sentenced to thirty years to life for his conviction of first degree murder. *State Court Record, Exhibit A-1*, p. 49.  During the criminal case, Petitioner used a Spanish interpreter. *Id.*, p. 45.

4.      On June 10, 1997, Petitioner arrived at the Idaho Department of Correction's (IDOC) Idaho Correctional Institution-Orofino (ICI-O) facility. *Exhibit 101.*

5.      While at ICI-O, Petitioner was assigned to close-custody housing during the following time periods: (1) from June 10, 1997 until October 6, 1998 (483 days); (2) from September 16, 1999 until December 22, 1999 (97 days); and from October 4, 2000 until April 23, 2003 (931 days). *Exhibit 101*; *Tr.* 90:13-17. Generally, an inmate in close custody housing used a form to request that legal material and books be delivered to him in his cell. *Tr.* 89:14-20.  Here, the prison legal resource center records reflect that Petitioner visited the legal resource center and was provided with translating and other services during his time in close custody. *Exhibits 109 & 110.*

MEMORANDUM ORDER  3

6.      Petitioner finished the first grade in Mexico at about age eight and received

no further formal education after that.  *Tr.* 12:20-23; 13:16-17.  Petitioner

speaks and understands very little English. *Tr.* 26:11-18; *Exhibits 108 &*

*109.*  Petitioner is unable to read or write English, but he learned to read a

little bit of Spanish in 1999 or 2000.  *Exhibit 111; Tr.* 14:2-10; 26:1-10.   As

a result of his educational and English language deficiencies, Petitioner

needed assistance from others, including bilingual speakers, to determine

which legal course of action to pursue and to complete even the most basic

of legal documents or requests.  *Tr.* 20:25; 21:1-9; 26:9-25; 100:13-25;

101:1-14.

7.      When Petitioner arrived at ICI-O, the prison had a law library for prisoners'

use.  *Tr.* 51:19:25; 52:1-4.  In about January 1998, the law library was

changed to the legal resource center, and many of the reference books were

removed.  *Tr.* 52:5-11.  From that time to the present, the formal prisoner

access to courts legal system consisted of IDOC paralegals who could

provide forms, copies, typewriters, limited relevant English-language law

books such as the Idaho Code containing the Uniform Post-Conviction Act,

and the federal habeas corpus statutes, and translating assistance, but no

legal advice.  *Tr.* 54:8-23; 71:5-25; 72:1-25; 73:1-24.

8.      During Petitioner's incarceration at ICI-O, prisoners were allowed to retain

attorneys or use other inmates to assist them with their cases if they wished.

MEMORANDUM ORDER  4

*Tr.* 74:3-13.  If an inmate chose to use other inmates to assist him, the inmates had to abide by several restrictions: the inmates must live on the same housing tier, the assistance must be provided in person, and the assisting inmate could not keep the assisted inmate's legal work in his possession.  *Tr.* 74:12-25; 75:1-18.  There was no guarantee that there were any inmates available to help Petitioner.  *Tr.* 48:4-22; 98:16-19.  Rather, inmate help was available at the pleasure of the inmates with legal knowledge.  *Tr.* 28:1-3; 48:10-22.  Because Petitioner had no legal experience, any inmate who agreed to assist Petitioner would select the legal options available to Petitioner and explain the possible remedies to him.  *Tr.* 27:16-22; 34:7-11; 37:10-15; 39:14-19.  Petitioner signed when necessary and "just trusted them with whatever they were doing."  *Tr.* 27:23-25; 28:1-3.

9.    On March 7, 1997, the day he was sentenced, Petitioner orally requested through his interpreter that his counsel, Van Bishop, file a notice of appeal for Petitioner.  *Tr.* 33:6-24.  Petitioner received some court documents after sentencing.  *Tr.* 35:2-4.

10.    On July 22, 1997, a fellow inmate helped Petitioner write to Van Bishop's co-counsel, Maureen Cassidy, to inquire about the status of his appeal.  *Tr.*, 18:12-19; 19:2-19;  *Exhibit 103.*  Petitioner did not receive a response.

MEMORANDUM ORDER  5

11.    From August 1997 through January 29, 1998, Inmate Law Library Clerk

Edward Anderson, an employee of the prison, assisted Petitioner by typing

letters to Petitioner's trial counsel and the court.  *Tr.* 92:9-16; 93:1-7;

*Exhibits 104, 105, 106*.  When Anderson first met Petitioner, Anderson told

Petitioner through translator Jorge Perez about the one-year statute of

limitation for post-conviction relief where no appeal was filed.  *Tr.*, 103:9-

15.

12.    On August 11, 1997, Anderson wrote a letter for Petitioner requesting a

copy of his file from Attorney Bishop, specifically noting that Petitioner

was interested in filing a post-conviction action. *Exhibit 104*.

13.    On November 28, 1997, Anderson sent another letter to Bishop requesting a

copy of Petitioner's file, noting that the deadline for filing a post-conviction

is "fast approaching."  *State Court Record, Exhibit C-1*, p. 9.

14.    On December 14, 1997, Anderson wrote a letter for Petitioner requesting

that Bishop give him a copy of his file for purposes of preparing a post-

conviction action.  *Exhibit 105*.

15.    Van Bishop sent a note to Petitioner telling him that his file has been

transferred to Attorneys Wiebe & Fouser.  *Petitioner's Affidavit*, ¶ 11

(Docket No. 26-2).

16.    On January 29, 1998, Petitioner sent a letter to the state trial court

requesting a copy of his file and stating, "I am hoping to file a Post-

MEMORANDUM ORDER  6

Conviction Relief and I will need to obtain the help of another inmate,"

explaining that he did not speak or read English that well.  Petitioner also

notified the court that Attorney Bishop "has ignored my every request," and

that the new attorneys, Wiebe & Fouser, also ignored his requests.  "Is there

anything at all you can do to help me?  My time limit for filing is running

out or possibly gone," Petitioner wrote.  *Exhibit 1; Tr.* 94:22-25.

17.    On January 29, 1998, Judge Weston forwards copies of Petitioner's letter to

the court to Attorneys Bishop and Wiebe & Fouser, but made no response

to Petitioner.  *State Court Record, Exhibit C-1*, p. 44.  There is also a note

by the court to tickle the case for March, but the court did nothing further

on the request or on the case.  *Exhibit 2.*

18.    In February 1998, Petitioner asked the ICI-O legal resource center for help

in obtaining his court files from his attorney.  Mr. Shedd suggested that

Petitioner write to his attorney.  *Exhibit 107*; *Tr.* 55:4-9.

19.    In February 1998, Wiebe & Fouser sent Petitioner a reply letter.

Concerning that letter, Anderson noted: "They said they were the attorneys,

and "they basically didn't know what I was asking for, I guess.  But I didn't

even know at that -- at that point, I wasn't even sure that what they were

supposed to do."  *Tr.*, 95:3-25; 96:1-5.

20.    In or about February 1998, Anderson was removed from his position in the

legal resource center.  *Tr.* 95:17-25; 96:1-12.  After that, several different

inmates helped Petitioner over the next several years.  *Tr.* 28:9-14; 47:22; 48:9.

21.    On or about March 25, 1998, Petitioner had the legal resource center paralegal read a letter from Petitioner's attorney.  The inmate said he wanted his legal material back from his attorney.  The paralegal suggested that he write to his attorney.  On March 26, 1998, the paralegal made a copy of Petitioner's letter to his attorney.  *Exhibit 107.*

22.    **Petitioner's federal statute of limitations expired on April 19, 1998.**

23.    On August 2, 1999, Petitioner requested and received a state post-conviction form packet from the legal resource center.  *Exhibit 108.*

24.    On October 28, 1999, Petitioner obtained a Rule 35 motion form packet from the legal resource center.  *Exhibit 108.*

25.    On January 7, 2000, Petitioner sent an "Information Request" drafted by another inmate to Attorney Wiebe, asking about a direct appeal and a Rule 35 motion.  *Exhibit 3.*  On April 8, 2000, the "Information Request" was mailed to the state court.  *Id.*  Nothing in the record suggests that Wiebe or the court ever responded.

26.    On March 7 and 11, 2000, Petitioner requested translation assistance through the legal resource center to inquire about the status of his appeal.  On March 7, he learned that the Idaho Supreme Court had no appeal on file,

MEMORANDUM ORDER  8

and on March 11, he confirmed that the state appellate public defender had no record that an appeal had ever been filed.  *Exhibit 109*; *Tr.* 43:14-25; 44: 2-21.

27.     On May 11, 2000, via a translated telephone call facilitated by the prison paralegal,  the Idaho Appellate Public Defender stated that they would assist the inmate in getting his legal work back from his public defender.  *Exhibit 109.*

28.     On July 28, 2000, Petitioner filed a Rule 35 motion for reduction of sentence pro se and requested appointment of counsel.  *State Court Record, Exhibit A-1*, at pp. 53-59.

29.     On August 8, 2000, Attorney Sullivan, Canyon County Public Defender, was appointed for Petitioner on the motion for reduction of sentence.  On October 23, 2000, the motion for reduction of sentence was denied.  *State Court Record, Exhibit A-1*, at pp. 69-73.

30.     On December 7, 2000, Petitioner filed his post-conviction petition through Attorney Sullivan.  On February 13, 2003, Petitioner's post-conviction case was dismissed as untimely.  *State Court Record, Exhibit C-1*, at pp. 43-47. The state court noted that Petitioner did not request appointment of counsel for his post-conviction case, that Petitioner acknowledged in his January 29, 1998 letter that he was aware of the filing deadline, and that Petitioner's

MEMORANDUM ORDER  9

letter demonstrated his ability to read and write in English.  No evidentiary hearing was held.  *Id.*

31. On April 22, 2003, Petitioner was moved from ICI-O to Idaho State Correctional Institution (ISCI).

32. On June 17, 2004, the Canyon County Public Defender wrote back to Petitioner and told him that they would not provide copies of the file unless he paid $.50 per page for the 400-page file (a cost of $200.00), noting that they do not waive copy charges for indigency.  *Exhibit A to Petitioner's Objection to State's Motion for Summary Dismissal & Supporting Affidavit* (Docket No. 18).

33. On July 21, 2004, Petitioner filed his federal Petition with the help of another inmate.  *Petition* (Docket No. 1).  As of that date, he still had not received a copy of his state case file from any source. *Petitioner's Supporting Affidavit*, at ¶¶ 3-6 (Docket No. 18).

## STANDARDS OF LAW

**A.    Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."   In such case, the Court construes the facts in a light most favorable to the petitioner.  When a court is considering a motion to dismiss, it may take judicial notice of

MEMORANDUM ORDER  10

facts outside the pleadings.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281

(9th Cir. 1986).[2]  A court may look beyond the complaint to matters of public record, and

doing so does not convert a motion for summary dismissal into a motion for summary

judgment.  *Id.*  Accordingly, the Court shall take judicial notice of those portions of the

state court record lodged by the parties.

**B.     Equitable Tolling**

To establish entitlement to equitable tolling, a litigant bears the burden of proving

(1) "that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  In

*Pace*, the petitioner argued that "'state law and Third Circuit exhaustion law created a

trap' on which he detrimentally relied as his federal time limit slipped away."  *Id.* at

1814-15.  The Supreme Court declined to address this theory, determining, "[e]ven if we

were to accept petitioner's theory, he would not be entitled to relief because he has not

established the requisite diligence."  *Id.* at 1815.

On the diligence issue, the *Pace* Court determined that the petitioner had not acted

diligently because he had "waited years, without any valid justification," to bring his

PCRA claims in state court, and then he waited "five more months after his PCRA

proceedings became final before deciding to seek relief in federal court."  *Id.*

_____

[2]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*,
501 U.S. 104 (1991).

The Ninth Circuit has held that attorney negligence in miscalculating the statute of limitations is not a basis for equitable tolling. *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001). However, sufficiently egregious attorney misconduct may be grounds for equitable tolling. *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003).

In *Spitsyn v. Moore*, equitable tolling applied where an attorney was retained to prepare and file a federal habeas petition, failed to do so, and disregarded requests to return files pertaining to the case until well after the petition was due; the case was remanded to inquire regarding petitioner's diligence in ultimately filing petition (*See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1183 (9th Cir. 2001)).

In *Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2006), the Court determined that an absence of Spanish-language materials combined with a Spanish-speaking inmate's inability to find translation assistance could amount to grounds for equitable tolling. It also determined that "a petitioner who demonstrates proficiency in English or who has the assistance of a translator would be barred from equitable relief." *Id*. at 1070.

Finally, in *Roy v. Lampert*, 465 F.3d 964 (9th Cir. 2006), the Ninth Circuit explained:

> It is clear that pro se status, on its own, is not enough to warrant equitable tolling. *See, e.g., Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[W]e have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). But we also here reaffirm the clear principle that, even though pro se status alone is not enough to warrant equitable tolling, it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d

MEMORANDUM ORDER  12

696, 699 (9th Cir.1988) ("This court recognizes that it has a duty to ensure that pro se litigators do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").

*Id.* at 970.

## C.     State-Created Impediment

The "state-created impediment" argument arises from 28 U.S.C. § 2244(d)(1)(B), which provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court.  The limitation period shall run from the latest of . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.

In *Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (*en banc*), the Ninth Circuit Court held that the inadequacy of a prison library – particularly, the unavailability of a copy of AEDPA – could constitute an impediment to filing under § 2244(d)(1)(B). In *Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003), the petitioner argued that the prison's failure to provide a copy of AEDPA caused him to miss his statute of limitations. The State argued that because it had taken no affirmative action, there could be no "state created impediment."  The Fifth Circuit Court disagreed, holding:

> [T]he State's failure to make available to a prisoner the AEDPA, which sets forth the basic procedural rules the prisoner must follow in order to avoid having his habeas petition summarily thrown out of court, including the newly imposed statute of limitations, is just as much of an impediment as if the State were to take "affirmative steps" to prevent the petitioner from filing his petition."
> * * *

MEMORANDUM ORDER  13

> Accordingly, a state's failure to provide the materials necessary to prisoners
> to challenge their convictions or confinement, in this case a copy of the very
> statute that is being used to render Egerton's petition time-barred,
> constitutes an "impediment" for purposes of invoking § 2244(d)(1)(B).

*Id.* at 438.

In *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005), the Court noted: "The limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials." *Id.* at 1087 (referencing *Whalem/Hunt* and *Egerton*). In *Bryant v. Schriro*, -- F.3d --, 2007 WL 2410173 (9th Cir. Aug. 27, 2007), the Court emphasized that the state-created impediment must have *prevented* an applicant from filing his federal habeas corpus petition. *Id.* at *2. If the state-created impediment provision applies to a case, then the statute of limitation does not begin running until the impediment is removed.

## DISCUSSION

### A.    Improper Access to Courts System

Petitioner argues that the State's selection of an access to courts system was a state-created impediment, thwarting his diligent efforts to try to assert his state court and federal court rights. *Tr.* 8:1-7. Equitable tolling or the state-created impediment statute may be applied where a law library does not have a copy of AEDPA and where the inmate had no independent knowledge of any limitations period. *Roy*, 465 F.3d at 974

MEMORANDUM ORDER  14

(relying on *Whalem/Hunt v. Early*, 233 F.3d at 1147).  Here, it is undisputed that the legal

resource center had a copy of AEDPA.

A state is required to provide inmates only with limited necessary tools to access

the courts.  An inmate does not have the freestanding right to legal advice, access to a

complete law library, or assistance with research and brief writing.  *Lewis v. Casey*, 518

U.S. 343, 354 (1996).  The *Lewis v. Casey* Court opined that "the Constitution does not

require that prisoners (literate or illiterate) be able to conduct generalized research, but

only that they be able to present their grievances to the courts - a more limited capability

that can be produced by a much more limited degree of legal assistance." *Id.* at 361.  The

Court outlined the limited nature of prison legal programs that are sufficient to provide

access to the courts:

> It must be acknowledged that several statements in *Bounds* went beyond the
> right of access recognized in the earlier cases on which it relied, which was
> a right to bring to court a grievance that the inmate wishes to present.
> These statements appear to suggest that the State must enable the prisoner
> to discover grievances, and to litigate effectively once in court.  These
> elaborations upon the right of access to the court have no antecedent in our
> pre-*Bounds* cases, and we now disclaim them.  To demand the conferral of
> such sophisticated legal capabilities upon a mostly uneducated and indeed
> largely illiterate prison population is effectively to demand permanent
> provision of counsel, which we do not believe the Constitution requires.

518 U.S. at 354.

The prison legal resource center had the necessary tools for Petitioner to file a state

post-conviction action and a federal habeas corpus petition.  This meets the *Lewis v.*

*Casey* standard.  Unfortunately for Plaintiff, *Lewis v. Casey* does not require the prison to

MEMORANDUM ORDER  15

provide legal advice, even to illiterate, non-English-speaking prisoners.  Legal advice

includes the choice of action to pursue, the court in which to pursue it, and the time

limitations for filing such actions.  Plaintiff obtained his legal advice from other inmates,

who apparently (and understandably) did not know the complex interaction between state

post-conviction and federal habeas corpus relief.

Although Petitioner frames the issue as a state-created impediment to his right to

access the courts, it is really an issue of inadequate or negligent legal advice by other

inmates because the Idaho system meets the minimum standards of *Lewis v. Casey*.

Ignorance of the law or a "pro se petitioner's lack of legal sophistication is not, by itself,

an extraordinary circumstance warranting equitable tolling."  *Raspberry v. Garcia*, 448

F.3d 1150, 1154 (9th Cir. 2006).  Attorney negligence in miscalculating the statute of

limitations is not a basis for equitable tolling.  *Frye v. Hickman*, 273 F.3d 1144 (9th Cir.

2001).  Similarly, many courts have held that reliance on another inmate's legal advice

does not constitute extraordinary circumstances.  *Whiddon v. Dugger*, 894 F.2d 1266,

1267 (11th Cir.), *cert. denied*, 498 U.S. 834 (1990); *Marsh v. Soars*, 223 F.3d 1217, 1220

(10th Cir. 2000), *cert denied*, 531 U.S. 1194 (2001); *Mendez v. Artuz*, 2000 WL 991336,

at *2 (D.N.Y. July 19, 2000); *Reid v. Lambert*, 2004 WL 1305249 (D. Or. 2004).  While

the Ninth Circuit has not addressed the issue of negligent inmate legal advice, it has held

in a similar context that inmate legal assistance does not constitute "cause" for a showing

of "cause and prejudice" for procedurally defaulted claims.  *See Tacho v. Martinez*, 862

F.2d 1376, 1381 (9th Cir. 1988) (reliance on allegedly incompetent jailhouse lawyer not

MEMORANDUM ORDER  16

cause for default); *Hughes v. Idaho Bd. of Correction*, 800 F.2d 905, 909 (9th Cir. 1986) (release of inmate's legal assistant not cause for default).

Here, Petitioner could not read Spanish or English.  Therefore, the question is one of illiteracy or ignorance, rather than language barrier as in *Mendoza*, *supra*.  Petitioner had the ability to check out the book containing AEDPA and have an inmate read it to him throughout the time periods when a translator was available to him or to ask the prison paralegal to read him the AEDPA with the help of a translator.  If he had asked the prison paralegal to do this, and the paralegal had refused, then the Court could address the issue as an access problem.  There is no such allegation in the record.

**B.      Inaction of Counsel and Court in State Court Action**

The record strongly suggests that Petitioner encountered negligent behavior on the part of his first counsel, his second counsel, and, potentially, the state court staff in helping him resolve the issue of who was representing him, if anyone, and whether a direct appeal had been filed.  Negligent behavior is generally not enough to constitute grounds for equitable tolling, but here, the Court concludes that the cumulative effect of having no one respond to his request is enough to constitute extraordinary circumstances beyond his control.  Petitioner made an effort to contact every officer of the court who had a role in his case.  Among the three avenues Petitioner chose, none resolved his representation issue.  It is an ineffective judicial system when a person in Petitioner's position is treated with such indifference.  Sufficiently egregious attorney misconduct is grounds for equitable tolling.  *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003).  The effect

of the cumulative conduct of these attorneys and the court constitutes sufficiently egregious conduct, though each one alone may have been merely negligent.[3]

After As a result, the Court concludes that Petitioner is entitled to equitable tolling or application of the state-created impediment statute from the date his federal statute began running on April 19, 1998, until  March 11, 2000, the day he learned that no appeal had been filed.  Thus, he had until March 12, 2001, in which to file his federal petition.  His statute ran for four months after March 12, 2000.  It was statutorily tolled from July 28, 2000, when he filed a Rule 35 motion for reduction of sentence until October 23, 2000, when it was denied.  His statute expired eight months later, because his December 7, 2000 post-conviction petition was untimely, and thus was not a properly filed petition that qualified for statutory tolling.  The Court also notes that even if it tolls the time period from March 11, 2000, through December 7, 2000, -- the time period when Petitioner had no access to his legal file to prepare a pro se state post-conviction petition -- such tolling would end when his appointed counsel filed the petition for him and would not be of sufficient length to cover the remaining four years by which his federal Petition was late.

After Petitioner's post-conviction action was dismissed for untimeliness on February 13, 2003, he could not obtain a copy of his state court file from any counsel so

_____

[3]  The law is clear that "judges have no obligation to act as counsel or paralegal to pro se litigants."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004).  A defendant "does not have a constitutional right to receive personal instruction from the trial judge on . . . procedure," nor does "the Constitution require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course."  *McKaskle v. Wiggins*, 465 U.S. 168 (1984).

that he could file a federal petition.  In *Espinoza-Matthews v. California*, 432 F.3d 1021,

(9th Cir. 2005), the Court of Appeals allowed equitable tolling where the petitioner was

unable to access his legal materials and he was diligent in attempting to obtain them.  The

Court determined: "As we have recognized, it is 'unrealistic to expect [a habeas

petitioner] to prepare and file a meaningful petition on his own within the limitations

period' without access to his legal file."  432 F.3d at 1027-28 (citing *Spitsyn*, 345 F.3d at

801).[4]

Equitable tolling requires both an extraordinary circumstances (like the inability to

access one's file) *and* diligence.  In *Espinoza-Matthews*, the Court outlines the many

efforts the petitioner made to obtain his materials from the prison, as well as his motion

for an extension of time to file his habeas corpus petition based on his inability to obtain

his file.  432 F.3d at 1027-28.

Here, there is no indication in the record that Petitioner requested a copy of his file

between May 11, 2000, and June 2004, a time period of over four years.  Petitioner did

not exercise diligence during this time period to either obtain his file or take any action in

federal court.  Petitioner could have requested a copy of his file from his post-conviction

counsel during the state court proceeding.  While there is still the possibility that post-

conviction counsel would have required a payment for a copy of the file and it is true that

Petitioner would have had to come to federal court with unexhausted or procedurally

---

[4]  The Court rejects Respondent's argument that because Petitioner knew the facts
supporting his claims, he could have filed the petition without the legal file, because the Ninth
Circuit has determined that having the file is a necessary prerequisite.

MEMORANDUM ORDER  19

defaulted claims, Petitioner still had a wide variety of remedies to seek in federal court:
(1) he could have requested help obtaining a copy of his file and an extension of time to
file his petition; (2) he could have filed a petition and asked for the stay-and-abey
procedure, *see Pace v. Diguglielmo*, 544 U.S. at 416; or (3) he could have filed his
petition under the ineffective state court process statute, § 2254(b)(1)(B)(i).  What defeats
Petitioner's claim of diligence -- despite the fact that his lawyers and the court ignored
him and that he was dealt a final blow of being asked to pay $.50 a page for a copy of his
file when his futile post-conviction case was finally done -- is that Petitioner never took
any action specifically aimed at meeting or preserving his federal habeas corpus deadline.

Rather, all of his action is aimed at his state court post-conviction actions, and,
while that makes a certain amount of sense because he had *no* exhausted claim as a result
of the alleged failure of counsel to file a direct appeal, there is no analogous case law that
supports application of equitable tolling in such a circumstance.  It cannot be said that
Petitioner's state-court problems *prevented* him from filing his federal habeas corpus
petition or *caused* its lateness, because there is no indication in the record that Petitioner
had an awareness of a federal statute of limitations, that he had an awareness of a federal
remedy, or that he planned to file a federal habeas corpus action.  The Ninth Circuit
recently held that where a petitioner was unaware of the federal statute of limitations, he
is not entitled to equitable tolling or the state-created impediment provision on the
argument that the prison legal resource center had no case law interpreting the statute of

limitations, because the element of "causation" is missing.  *Bryant*, -- F.3d --, 2007 WL

2410173 at*3.

Petitioner's case cannot be distinguished from those cases where inmates have not

qualified for equitable tolling when they have chosen to pursue post-conviction actions

that later turn out to be improperly filed rather than taking some action in federal court to

preserve their statute of limitations.[5]  *See Ferguson v. Palmateer*, 321 F.3d 820 (9th Cir.

2003) (it is unreasonable for a state prisoner to rely on the state statute of limitation rather

than AEDPA's statute of limitation).  It would be improper to extend equitable tolling

here, where the circumstances are analogous.

**C.      Conclusion**

The Court rejects Petitioner's argument that the State's access to courts program

was inadequate so as to warrant equitable tolling or application of the state-created

impediment statute.  The Court finds and concludes that Petitioner is entitled to equitable

---

[5]  In *Pace*, the Court rejected this argument:

Finally, petitioner challenges the fairness of our interpretation. He claims that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus that his federal habeas petition is time barred. Brief for Petitioner 30. A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005). A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court. Ibid. ("[I]f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics," then the district court likely "should stay, rather than dismiss, the mixed petition").

544 U.S. 416-17.

MEMORANDUM ORDER  21

tolling for the time period from April 19, 1998, through March 11, 2000.  He is not

entitled to tolling for the approximately four years that lapsed after that date.  While lack

of one's legal file can constitute grounds for equitable tolling, Petitioner failed to show

diligence by taking any step toward preserving his federal statute and federal claims and

failing to ask for a copy of his file to facilitate his federal filing from 2000 through 2004.

As a result, Petitioner's untimeliness cannot be excused, and his Petition shall be

dismissed with prejudice.

**D.    Instructions for Appeal**

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition,

he must first obtain a certificate of appealability by filing a request for a certificate of

appealability with the federal district court.  28 U.S.C. § 2253(c).  Until a certificate of

appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of

an appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   A federal district court will

not issue a certificate of appealability absent "a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by

demonstrating that reasonable jurists would find debatable both the merits of the

constitutional claims and any dispositive procedural rulings by the district court.  *Miller-*

*El v. Cockrell*, 537 at 336 (2003).

MEMORANDUM ORDER  22

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Dismiss (Docket No. 27) is GRANTED.  Petitioner's Petition is DISMISSED with prejudice.



DATED:  **September 10, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM ORDER  23